## Provident Tradesmens Bank and Trust Company v. Pemberton

*Townsend Elliott & Munson,* for plaintiff.

*D. Marcu,* for defendant.

BURCH, J., April 24, 1961.—This is an appeal from an order making absolute a rule to open judgment entered by confession. The petition and rule was filed on behalf of one of defendants, I. Prusky.

Judgment was entered against both defendants on December 31, 1959, and damages were assessed in the sum of $2,767.64. On February 16, 1960, a rule to show cause why the judgment should not be stricken off or opened as to defendant, I. Prusky, was granted.

The petition in support of the rule avers that I. Prusky is president of Reliable Motors, Inc., a corporation engaged in the business of selling automobiles; that for a long time prior to July 28, 1958, plaintiff financed sales of automobiles made by Reliable Motors, Inc.; that on July 28, 1958, Mary L. Pemberton agreed to purchase from Reliable Motors, Inc., a new 1958 Pontiac automobile; that defendant, Prusky, brought Mary L. Pemberton to plaintiff's bank to arrange a loan so that she could make payment for the

automobile; that plaintiff required that insurance be placed on the automobile for fire, theft and collision as a condition to making the loan; that it was agreed between Prusky and W. G. Bellairs, Assistant Vice-President of plaintiff that the transaction should be handled on a security agreement basis rather than the usual form of installment sale contract which plaintiff and Reliable Motors, Inc., customarily used; that it was also agreed that, in the event the insurance should at any time lapse or be cancelled, plaintiff would promptly notify defendant so that coverage could be arranged to protect defendant in accordance with the express arrangement in all transactions in which plaintiff financed sales of automobiles by Reliable Motors, Inc.; that it was the custom in Philadelphia in the sale and financing of automobiles that if insurance on a financed automobile lapsed or was cancelled the financing agency would notify the dealer so that he could protect himself.

The petition further avers that on July 28, 1958, Mary L. Pemberton executed a security agreement and Prusky a security agreement note; that Prusky arranged with one John P. Murdoch, an insurance broker, to issue a policy of insurance for a total premium of $168 which was included in the sales price of the automobile; that the policy provided that any loss would be payable to Mary L. Pemberton and plaintiff as their interests appear; that defendant has been advised by plaintiff that some time in November, 1959, the automobile was damaged in a collision so that its value was reduced to about $500; that at the time of the collision, without the knowledge of defendant or Reliable Motors, Inc., the insurance had been cancelled by the insurance carrier and that plaintiff had been notified but in violation of the agreement with Prusky and in violation of the custom which existed plaintiff failed to give defendant notice; that

except for the neglect by plaintiff of its agreement and duty the automobile would have been covered by insurance so that no loss or damage would have been suffered by plaintiff or by defendant; that the 18 percent collection fee included in the judgment is unconscionable and improper, a $20 late fee is irregular and plaintiff did not credit defendant for the value of the automobile in the assessment of damages.

Plaintiff filed an answer which admits that it did business for a long time with Reliable Motors, Inc., but avers that the relationship was terminated March 1957 and that it only did business with Prusky in his capacity as president of Reliable Motors, Inc.; that because Mary L. Pemberton was a bad credit risk the loan was approved solely upon the guaranty of Prusky and as an accommodation to him; that he was advised that plaintiff assumed no responsibility for insurance coverage but that it accepted title to the automobile and insurance coverage for the protection of Prusky and as a special favor to him.

The answer denies that W. G. Bellairs agreed with Prusky that in the event that the insurance lapsed or was cancelled that plaintiff would notify Prusky; that in the Security Agreement Prusky expressly waived all notices and agrees that his liability is absolute and unconditional; that there was no express agreement with Reliable Motors, Inc., while the relationship existed with reference to notification of lapse or cancellation of insurance. The answer further denies that it was the practice and custom in Philadelphia in the sale and financing of automobiles for the financing agency to notify the dealer of lapse or cancellation of insurance.

The answer admits that at the time of collision the insurance had been cancelled and that plaintiff had notice prior to cancellation but denies that plaintiff had any duty to notify Prusky.

The answer incorporates "New Matter" which avers that Reliable Motors, Inc., placed insurance on the automobile through John Murdoch, an insurance broker. Said insurance was placed with Home Mutual Insurance Company of Philadelphia; that in January 1959, the insurer paid a claim of $799 for damages to the car in question and subsequently cancelled the coverage effective June 1, 1959; that between January and June 1, 1959, Murdoch talked to Prusky a number of times about replacement of the insurance with another company; that on July 9, 1959, plaintiff received an insurance policy from Atlas Insurance Agency, effective June 12, 1959, to June 12, 1960, and that plaintiff does not know how or by whom this insurance was placed; that on August 10, 1959, Murdoch mailed a check to Reliable Motors, Inc., for a return of $25.16 as a result of the first cancellation; that on September 13, 1959, the then existing insurance coverage was cancelled for non-payment of premium; that this coverage was reinstated on September 29, 1959, and again cancelled effective November 15, 1959.

Defendant, I. Prusky, filed a reply to new matter which denies that Home Mutual Insurance Company had paid a claim of $799 or had cancelled the insurance effective June 1, 1959. The reply denies that defendant had talked with Murdoch at any time concerning replacement of insurance. It is averred that following the damage to the car in the accident of November 1959, defendant was informed by plaintiff that there had been a policy of insurance which had been cancelled after notice to plaintiff. The reply denies that Murdoch had mailed a check to Reliable Motors, Inc., for a return premium of $25.16 but on information and belief it avers that the check was issued to Mary L. Pemberton and was received and used by her without the knowledge of defendant.

Depositions on behalf of defendant were taken of I. Prusky and James E. Kirk. Prusky testified that Reliable Motors, Inc., had a relationship for about five years with plaintiff whereby plaintiff acted as its financing agent. During this period Reliable Motors, Inc., would place insurance through a broker and cause policies to be delivered to plaintiff bank, naming the bank as a loss payee. During this period whenever the policy lapsed or was cancelled the bank would notify Reliable Motors, Inc. He further testified that he arranged with Mr. Bellairs for financing of the sale to Mary L. Pemberton; that Bellairs suggested that, because the formal arrangement with Reliable Motors, Inc., had terminated, the transaction should be handled as a security agreement but that Bellairs assured him that he would be protected by notification in case of lapse or cancellation of insurance. Plaintiff bank issued a check in the sum of $3,136.60 payable to Reliable Motors, Inc., and although Mary L. Pemberton was required to pay six percent interest, defendant received the usual dealer's discount and was only charged four and one-half percent.

James E. Kirk testified that he had long experience as an employe of banks in connection with bank financing for automobile dealers; that there was an established custom for banks to notify dealers when insurance lapsed or was cancelled. The dealer received no notice direct from the insurance company or the broker because the bank was named as loss payee and the dealer appeared nowhere in the policy.

Plaintiff took the depositions of John P. Murdoch and Walter G. Bellairs. Murdoch testified that he was an insurance broker and was also independently engaged in the business of buying and selling automobiles; that he spoke to the person "whoever that person was" handling insurance for Reliable Motors,

Inc., and advised such person of the cancellation of the policy covering Mary L. Pemberton; that he was instructed to mail the refund check to Mary L. Pemberton.

Bellairs testified that he refused to handle the transaction as a dealer transaction because the contractual relationship between the bank and Reliable Motors, Inc., had terminated and that he set the transaction up as a secured transaction directly with Mary L. Pemberton and guaranteed by Prusky. Although he personally had taken the affidavit to plaintiff's answer to defendant's petition, and said answer denied that a custom existed whereby the financing agent would notify a dealer of lapse or cancellation of insurance, on cross-examination he admitted that such a custom did in fact exist.

The primary issue to be determined is whether the transaction was in fact a "dealer" transaction, although it purports to be simply an ordinary security agreement guaranteed by Prusky individually. Paragraph 2 of plaintiff's answer states: ". . . It is further denied that plaintiff did business at any time prior to July 28, 1958, or at any time thereafter, with I. Prusky in the financing of automobiles, other than in his capacity as President of Reliable Motors." It is clear that the bank knew that Prusky was acting for Reliable Motors, which was actually the dealer financing the transaction. The bank issued its check to Reliable Motors, Inc., and gave Reliable Motors, Inc., the usual dealer's discount on the interest rate charged.

Having determined that the transaction was in fact a dealer transaction, did the bank have the duty to notify the dealer that the insurance was cancelled so that the dealer could obtain a replacement of the policy in order to protect the dealer's interest?

Although the answer filed by plaintiff denies that a custom exists requiring notice to a dealer and also denies that during the existence of the relationship between the bank and Reliable Motors, Inc., there was an express agreement providing for such notice to be given, the depositions establish beyond question that a custom does in fact exist and that the bank did actually give notice to Reliable Motors, Inc., whenever a policy of insurance lapsed or was cancelled throughout the period that the bank acted as financing agent for Reliable Motors, Inc.

The Uniform Commercial Code of April 6, 1953, P. L. 3, section 2-202 provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented.

"(a) by course of dealing or usage of trade (Section 1-205) or by course of performance (Section 2-208) ; . . ."

Section 1-205 provides:

"(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is in fact fairly to be regarded as establishing a common basis of understanding for interpreting their words and conduct.

Section 1-205

"(2) A usage of trade is any practice or method of dealing currently recognized as established in a particular place or among those engaged in trade or in a particular vocation or trade. Its existence and scope are questions of fact."

In the instant case the course of dealings between the parties and the custom existing in the trade certainly justified defendant in expecting to receive notice from the bank of cancellation of the policy of insurance. The bank receives notice from the insurer as a loss payee named in the insurance policy but the dealer as a stranger to the policy must rely on the bank to notify him so that he can protect himself by procuring new coverage.

The surety agreement signed by Prusky contains a waiver of "all notices whatsoever in respect to this Agreement" and also a provision that "the undersigned's liability under this agreement is absolute and unconditional and shall not be affected or released by reason of any action taken by Bank which is hereby consented or agreed to."

It is clear that said provisions apply to the text of the agreement and do not apply to a custom or usage of the trade which is binding on the parties irrespective of said text.

The Uniform Commercial Code, Comment on section 2-202, states, 12A PS page 109:

"Paragraph (a) makes admissible evidence of course of dealing, usage of trade and course of performance to explain or supplement the terms of any writing stating the agreement of the parties in order that the true understanding of the parties as to the agreement may be reached. Such writings are to be read on the assumption that the course of prior dealings between the parties and the usages of trade were taken for granted when the document was phrased. Unless carefully negated they have become an element of the meaning of the words used."

In the instant case it cannot be said that the well established custom is carefully negated by the use of a printed form which contains words applicable to the text of the agreement itself without any reference to a

custom or usage established outside of the four corners of the agreement.

The rule to strike off the judgment was discharged but for the foregoing reasons the rule to open judgment was made absolute.